**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2286-14T2

IN THE MATTER OF JOSEPH LANG.

_____

Submitted February 28, 2017 – Decided July 11, 2017

Before Judges Ostrer and Vernoia.

On appeal from the New Jersey Civil Service
Commission, CSC Docket Nos. 2015-342, 2015-
1335, 2015-1336, 2015-1337 and 2015-1338.

Fein, Such, Kahn & Shepard, P.C., attorneys
for appellant Joseph Lang (Brian W. Kincaid,
on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent Civil Service
Commission (Melissa H. Raksa, Assistant
Attorney General, of counsel; Todd A. Wigder,
Deputy Attorney General, on the brief).

PER CURIAM

Appellant Joseph Lang appeals from a December 5, 2014 final

agency decision of the Civil Service Commission (Commission)

denying his request for retroactive permanent appointment to the

second-level supervisor title of Fire Captain with the Harrison

Fire Department. We affirm.

Lang was employed by the Harrison Fire Department as a Fire Captain, which at the time was a first-level supervisor title. In 2009, he passed a promotional examination for the second-level supervisor title, which was then known as Battalion Fire Chief. Lang and Henry Richard, Joseph Nichirco, John Dwyer and John Crilley, who were also eligible for promotion to the Battalion Fire Chief title, were placed on an eligible list that was effective for a three-year period commencing on September 2, 2010. Richard ranked first on the list, Nichiro was second, and Lang was third. In 2011, Richard was promoted to Battalion Fire Chief.

Due to financial difficulties, Harrison implemented layoffs in 2011, eliminating the Deputy Fire Chief and Battalion Fire Chief titles and reducing the number of first-level supervisor Fire Captains from ten to five. Under the plan, the fire department consisted of a Fire Chief, five Fire Captains and twenty-four Fire Fighters.

As a result of the layoffs, Richard was demoted from Battalion Fire Chief to the second-level supervisor Fire Captain title. The four Fire Captains with the greatest seniority, Nichirco, Dwyer, John Mulrenan and Robert Gillen, retained their titles as Fire Captains. Because they had less seniority, Lang and another Fire Captain, Ronald Greenemeier, were demoted to Fire Fighters.

A-2286-14T2

Harrison subsequently negotiated an agreement with the affected employees' collective negotiations representative. Under the agreement, Harrison created a new first-level supervisor title of Fire Lieutenant,[1] and the Fire Captain title became a second-level supervisor title.

In November 2011, Harrison informed the Commission about a plan to reorganize the department. Harrison stated the department would consist of a Fire Director,[2] five second-level supervisor Fire Captains, four first-level supervisor Fire Lieutenants, and twenty Fire Fighters. To implement the reorganization, Harrison sought the Commission's approval to promote Richard, Dwyer, Nichirco, and Lang to the second-level supervisor Fire Captain title. Harrison also proposed making a provisional appointment of Mulrenan, Gillen, or Greenemeier to the fifth Fire Captain position.

In a December 8, 2011 letter responding to Harrison's proposal, the Commission advised that Richard, Nichirco, Mulrenan, Dwyer and Gillen were already serving in the Fire Captain title. The Commission further stated that Lang and Greenemeier were in

---

[1] Harrison subsequently adopted an ordinance creating the first-level supervisory title of Fire Lieutenant.

[2] Following the implementation of the layoff plan, Harrison eliminated the Fire Chief title and placed the supervision of the fire department with a civilian Fire Director.

A-2286-14T2

the Fire Fighter's title and therefore would have to first be appointed to the Fire Lieutenant title through certification of the special reemployment list for a first-level supervisor title.

In June 2012, Lang and Greenemeier were appointed Fire Lieutenants. Harrison did not take any action to appoint Richard, Dwyer, Nichirco, Mulrenan, or Gillen to the second-level supervisor Fire Captain title. Two years later, its failure to do so provided the basis for the requests by Harrison and Lang for the retroactive appointments to the second-level supervisor Fire Captain title that are at issue here.

In 2014, the Commission announced a Fire Captain test. Harrison requested to be included in the test but only for a second-level supervisor Fire Captain title. The Commission advised the test would be a second-level supervisor's test, which was open to Fire Lieutenants.

Harrison was subsequently advised by the Commission that three of Harrison's Fire Captains, Nichirco, Dwyer and Gillen,[3] were required to take the test. Harrison objected and asserted that Nichirco, Dwyer and Gillen were in their Fire Captain titles

---

[3] Richard was not required to take the test because he had been appointed to a second-level supervisor position from the 2010 Battalion Fire Chief promotional list prior to his 2011 demotion to Fire Captain. Mulrenan had applied for retirement and was not required to take the test.

pursuant to the Commission's December 8, 2011 letter. Harrison also asserted it did not request certification for its 2011 appointments of Richard, Nichirco and Dwyer to the Fire Captain title from the Battalion Fire Chief eligible list because it implemented the Commission's directive in the letter. Harrison noted it never intended to require that Dwyer and Nichirco take the Fire Captain test because they performed the second-level supervisor's duties for two years and were on the 2010 Battalion Fire Chief promotional list, which expired in 2013.

Harrison also argued that had it known the Commission would require that Dwyer and Nichirco take a Fire Captain's test in 2014, it would have requested in 2011 that the Commission certify the list for appointments to the second-level supervisor Fire Chief title, and would have promoted Dwyer and Nichirco from the list. Harrison also argued that, for the same reason, it would have appointed Lang in 2011 to Fire Chief because he was also on the Battalion Fire Chief eligible list.

Harrison requested that the Commission revive the expired Battalion Fire Chief eligible list to permit the appointment of Nichirco, Dwyer and Lang to the second-level supervisor Fire Chief title. Harrison further requested that the Commission waive the requirement that Gillen take the test because he performed the duties of a Fire Captain since 2011, and passed a second-level

supervisor exam in 2000, and therefore did not need any further testing.

In its December 5, 2014 final decision, the Commission found that when Harrison reorganized the fire department in 2011, it failed to follow required certification procedures for the second-level supervisors, and "simply left . . . Richard, Nichirco, Mulrenan, Dwyer and Gillen unchanged in their position of Fire Captain." The Commission also stated that Harrison "failed to follow certification procedures and timely appoint" Richard, Dwyer, and Nichirco as "second-level supervisors from" the Battalion Fire Chief eligible list, and failed to make "provisional appointments pending promotional examinations for . . . Gillen and Mulrenan." Harrison erred by failing to make changes to the official records after the 2011 reorganization. The Commission determined Harrison's failure "to take [the] steps to effectuate appointments from the Battalion Fire Chief . . . list is a clear administrative error on its part."

The Commission determined Richard was unaffected by Harrison's errors because he had been appointed to the second-level supervisor Battalion Fire Chief title, and his regular appointment to Fire Chief could be made from the special reemployment list during the 2011 reorganization. Based on equitable considerations, the Commission concluded it was

appropriate to revive the Battalion Fire Chief eligible list and retroactively appoint Dwyer and Nichirco from it because they were otherwise eligible for appointment from the list in 2011, and performed the duties of a second-level supervisor Fire Captain since that time. The Commission rejected Harrison's request for a waiver from the test requirement for Gillen because he was not on the Battalion Fire Chief eligible list and therefore was not entitled to a retroactive appointment based on the requested revival of the list.

The Commission also denied Lang's request for a retroactive permanent appointment to Fire Captain from the Battalion Fire Chief eligible list. The Commission determined Lang did not have a vested property interest in the Fire Chief position because the list expired in 2013. The Commission found Lang did not commence or complete a working test period in the second-level supervisor Fire Captain title, hold a provisional second-level supervisor title, or perform the duties of a second-level supervisor. The Commission noted that in November 2012, it made a classification determination that Lang was performing first-level supervisor Fire Lieutenant duties, and Lang did not appeal the Commission's decision.

The Commission also reasoned that if in 2011 Harrison had properly requested certification of the Battalion Fire Chief

eligible list and the special reemployment list, Richard, Nichirco and Dwyer would have been removed from the eligible list based on their appointments to the Fire Captain title. Their appointments would have left only Lang and Crilley on the list, thereby rendering the list incomplete. The Commission stated that because Lang had never performed second-level supervisor duties following the 2011 reorganization, it could not be assumed Harrison would have appointed Lang a Fire Captain from the Batallion Fire Chief list if Harrison had not erred in failing to properly make the 2011 Fire Captain appointments. The Commission concluded that Lang was not entitled to a retroactive permanent appointment to the Fire Captain title because in 2011, Harrison knew it could have only five Fire Captains, five persons were performing Fire Captain duties, and "Lang was not one of them." Lang appealed the Commission's final decision.[4]

## II.

Our review of an agency's decision is limited. <u>In re Stallworth</u>, 208 <u>N.J.</u> 182, 194 (2011). We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." <u>Lavezzi v. State</u>, 219 <u>N.J.</u> 163, 171 (2014) (quoting <u>City of Newark v. Nat.</u>

---

[4] Harrison did not appeal.

Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539, cert. denied, 449 U.S. 983, 101 S. Ct. 400, 66 L. Ed. 2d 245 (1980)). A reviewing court "should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). The party challenging the agency's action has the burden of proving that the action was arbitrary, capricious, or unreasonable. Lavezzi, supra, 219 N.J. at 171.

Lang argues the Commission's decision was made without a rational basis and is arbitrary, capricious and unreasonable. He contends the Commission erred in finding that he never performed second-level supervisor duties because he performed such duties prior to the 2011 reorganization. He asserts he was entitled to the requested retroactive appointment because he was on the Battalion Fire Chief eligible list, and he is similarly situated to Nichirco and Dwyer and the Commission granted retroactive appointments to them.

The Commission has the authority to revive an expired eligible list "to correct an administrative error." N.J.S.A. 11A:4-6; N.J.A.C. 4A:4-3.4. The Commission exercised its authority here to

permit Harrison to retroactively appoint Nichirco and Dwyer to the Fire Captain title because Harrison's failure to properly appoint them in 2011 was based on the erroneous belief the Commission's December 8, 2011 letter rendered the appointments unnecessary. The Commission reasoned that but for Harrison's administrative errors, Harrison would have properly appointed Nichirco and Dwyer in 2011 from the Battalion Fire Chief eligible list which was then in effect. The Commission's decision that Harrison would have otherwise appointed Nichirco and Dwyer in 2011 is supported by the evidence showing that Nichirco and Dwyer were promoted to the second-level supervisor Fire Captain title during the reorganization based on the Battalion Fire Chief eligible list, and performed the duties of the title thereafter.

Lang's arguments are based on the premise that he is identically situated to Nichirco and Dwyer, and the Commission therefore arbitrarily denied his request for the retroactive appointment. The evidence presented to the Commission demonstrated otherwise. Unlike Nichirco and Dwyer, Harrison could not have appointed Lang to the second-level supervisor Fire Captain title in 2011 because he had been demoted to Fire Fighter as part of the 2011 layoffs and therefore was not eligible for a second-level supervisor position. Moreover, in 2011 Harrison did not take any action to appoint Lang to the second-level supervisor title as it

A-2286-14T2

did for Nichirco and Dwyer. Instead, Harrison appointed Lang to a first-level supervisor title, Fire Lieutenant. In addition, the evidence showed Nichirco and Dwyer performed second-level supervisor duties at all times following the 2011 reorganization, and that Lang performed only first-level supervisor duties as a Fire Lieutenant.

The evidence supports the Commission's determination that Harrison's 2011 administrative errors in failing to properly appoint Nichirco and Dwyer warranted their retroactive appointments. The evidence also showed Harrison's errors had no impact on Lang because even without them, he would not have been appointed to the second-level supervisor Fire Captain title. Thus, Lang stood in shoes very different from those of Nichirco and Dwyer. Left unremedied, Harrison's 2011 errors adversely affected Nichirco and Dwyer. The errors, however, were irrelevant to Lang's appointment in 2011, and the Commission therefore reasonably determined there was no basis to retroactively appoint Lang to Fire Captain.

The Commission's determination that Lang was not entitled to a retroactive appointment based on Harrison's 2011 administrative errors is well-reasoned and supported by the evidence. We do not discern anything arbitrary, capricious, or unreasonable in the

11

Commission's decision, and Lang has not established it was contrary to law. See Virtua-West Jersey Hosp., supra, 194 N.J. at 422.

Lang's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION